IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO: 3:04CV425

| | |
|---|---|
| VERINDA A. BAXLEY,<br>Plaintiff<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>Defendant. | )<br>)<br>)<br>)   **ORDER**<br>)<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on the "Motion for Summary Judgment" (Document No. 10) and "Plaintiff's Memorandum of Law in Support ..." (Document No. 11), both filed February 17, 2005 by Verinda A. Baxley, and the "Motion for Summary Judgment (Document No. 13) and "Memorandum in Support of the Commissioner's Decision" (Document No. 14), both filed March 18, 2005 by the Commissioner of the Social Security Administration. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Commissioner's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will deny Ms. Baxley's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and affirm the Commissioner's decision.

### I. PROCEDURAL HISTORY

On April 9, 2001, Ms. Baxley applied for a period of disability and disability insurance benefits, alleging that she became disabled on September 7, 1999 as a result of back surgeries,

1

fibromyalgia, chronic fatigue, irritable bowel disease and seizures. Ms. Baxley's claim was denied initially and then again on reconsideration. Ms. Baxley requested a hearing before an Administrative Law Judge ("ALJ"), which was held August 14, 2003. On August 29, 2003, the ALJ issued an opinion denying Ms. Baxley's claim.

Subsequently, Ms. Baxley filed a timely Request for Review of Hearing Decision. On June 24, 2004, the Appeals Council denied Ms. Baxley's request for review, making the hearing decision the final decision of the Commissioner.

Ms. Baxley filed this action on August 27, 2004, and the parties' cross-motions for summary judgment are ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Id. (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d

343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether – at any time prior to December 31, 2001, Ms. Baxley's date last insured – Ms. Baxley became "disabled" as that term of art is defined for Social Security purposes.[1] The ALJ considered the evidence and concluded in his written opinion that Ms. Baxley has fibromyalgia, chronic fatigue syndrome, a seizure disorder, depression and back and leg pain as residuals of lumbar surgery, all of which are "severe" impairments within the regulatory meaning; that no impairment or combination of impairments meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that Ms. Baxley retains the residual function capacity to perform "unskilled" to "semi-skilled" "light" or "sedentary" jobs which would

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

not require frequent or repetitive bending, climbing, stooping or squatting; that Ms. Baxley is not able to return to her past relevant work; but that, based upon her residual functional capacity, Ms. Baxley could perform work which exists in significant numbers in the national economy. Accordingly, the ALJ concluded that Ms. Baxley was not under a disability as defined for Social Security purposes.

Ms. Baxley contends on appeal that the ALJ erred in his evaluation of her residual functional capacity. Specifically, Ms. Baxley contends that (1) the ALJ erred by failing to assign great weight to the evidence from Dr. Raymond Sweet and Dr. John Gibson, Ms. Baxley's treating physicians, and (2) the ALJ erred by failing to make adequate findings with respect to Ms. Baxley's allegations of pain. The undersigned concludes, however, that the ALJ's treatment of the opinions of Ms. Baxley's treating physicians and the ALJ's assessment of Ms. Baxley's subjective complaints of pain were proper. The undersigned further concludes that substantial evidence supports the ALJ's findings regarding Ms. Baxley's residual functional capacity and her ability to perform "unskilled" to "semi-skilled" "light" or "sedentary" work that does not require frequent or repetitive bending, climbing, stooping or squatting, as well as the ultimate conclusion that Ms. Baxley was not disabled.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The residual functional capacity assessment is based on all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. § 404.1545(a).

In challenging the ALJ's assessment of her residual functional capacity, Ms. Baxley first contends that the ALJ erred by not giving great weight to the opinions of Dr. Sweet and Dr. Gibson, her treating physicians. The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter, 993 F.2d at 35. A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.2d at 178 (citation omitted). The undersigned will address each opinion in turn.

### Dr. Sweet

On November 11, 2002, Dr. Sweet completed a form on which he stated that Ms. Baxley was disabled from engaging in any type of gainful employment "for the foreseeable future" as a result of her fibromyalgia and back surgery. Nonetheless, Dr. Sweet imposed only moderate limitations on Ms. Baxley's activities, stating that she was not to lift over fifteen pounds, was not to engage in repetitive bending and could not sit for longer than thirty minutes at a time.

In May 2000, after the alleged onset of disability, Dr. Sweet noted that Ms. Baxley was "doing very well" and had "good pain relief." Dr. Sweet also observed that she had just returned from a cruise, that she was "in good spirits" and was "doing well following surgery." In October 2000, shortly after Ms. Baxley went to the emergency room, Dr. Sweet indicated that she was "doing much better" and – although she experienced "some numbness on the left" – had "greatly decreased

5

pain." In February 2002, after Ms. Baxley's date last insured, Dr. Sweet reported to Keith Chiropractic Clinic that Ms. Baxley's back had "post-operative changes only" and that the "disc bulge ... is less than it was before." Dr. Sweet reported that he did not believe that Ms. Baxley needed surgery on her low back. Shortly thereafter, Dr. Sweet reported, again to Keith Chiropractic Clinic, that Ms. Baxley was experiencing only "a slight amount of degenerative disease" and her stability was "otherwise normal on flexion [and] extension." In short, Dr. Sweet's opinion that Ms. Baxley is disabled is not only internally inconsistent, but also inconsistent with other evidence in the medical record.

### Dr. Gibson

On June 11, 2002, Dr. Gibson completed a form on which he also stated that Ms. Baxley was disabled from engaging in any type of gainful employment "indefinite[ly]" as a result of her fibromyalgia and chronic fatigue syndrome. Interestingly, Dr. Gibson listed Ms. Baxley's date of disability onset as December 31, 2001 and – when asked about any limitation on her activities – wrote "see patient's narrative."

In contrast, during a September 2001 visit, Dr. Gibson recommended that Ms. Baxley "try to increase her level of aerobic exercise." In October 2001, Dr. Gibson noted that Ms. Baxley was "more animated ... and seems in good spirits" and that the family member accompanying Ms. Baxley reported "improvement in her lethargy." The undersigned did not find any evidence in the record of subsequent visits by Ms. Baxley to Dr. Gibson prior to December 31, 2001. Indeed, it is apparent from the face of Dr. Gibson's opinion that Dr. Gibson relied on Ms. Baxley's subjective complaints. As the ALJ noted, it was unlikely that Dr. Gibson was aware of Ms. Baxley's actual activity level.

In short, the record does not show any proof to allow either Dr. Sweet or Dr. Gibson to say

that Ms. Baxley is disabled. Based on the foregoing, the undersigned concludes that the ALJ properly evaluated the opinions of Dr. Sweet and Dr. Gibson and properly determined that neither opinion was entitled to controlling weight.

Ms. Baxley also objects to the ALJ's assessment of her subjective complaints of pain and other symptoms. The undersigned concludes, however, that the ALJ's treatment of those complaints was proper. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R.§ 416.929(b), § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1), § 404.1529(c)(1)). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted).

The record contains evidence of Ms. Baxley's fibromyalgia, chronic fatigue syndrome, seizure disorder, depression and history of lumbar surgery, which could be expected to produce some of the pain claimed by Ms. Baxley, and the ALJ – by concluding that Ms. Baxley suffered from

7

severe impairments – implicitly found that Ms. Baxley could satisfy the first prong of the test articulated in Craig. Indeed, the ALJ explicitly acknowledged Ms. Baxley experienced some back and leg pain.

The ALJ next evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work." Id. In this case, the record before the ALJ clearly established an inconsistency between Ms. Baxley's claims of inability to work, the objective medical findings, and Ms. Baxley's objective ability to carry on with certain daily activities. In May 2000, well after Ms. Baxley's alleged onset date, Ms. Baxley reported to Dr. Sweet that she had returned from a cruise. In May 2001, Ms. Baxley reported to a Social Security Administration employee that she prepared meals, did laundry, cared for her in-laws, watched television, read, cross-stitched and played with her dogs. At that time, Ms. Baxley also reported that she was able to dust and to take care of her flowers. As the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistences in the medical evidence." Seacrist, 538 F.2d at 1056-57. The undersigned concludes that the ALJ properly considered and evaluated Ms. Baxley's subjective complaints of pain and that substantial evidence supports the ALJ's conclusion that Ms. Baxley's testimony was not fully credible in light of the evidence.

As noted above, the residual functional capacity assessment is based on all the relevant evidence. 20 C.F.R. § 404.1545(a). In determining Ms. Baxley's residual functional capacity, in addition to the ALJ's evaluation of the opinion of Ms. Baxley's treating physicians and the ALJ's assessment of Ms. Baxley's complaints of pain, the ALJ also properly considered the Agency medical consultants' opinions. 20 C.F.R. § 404.1527(f)(2). With respect to Ms. Baxley's physical residual functional capacity, Dr. David H. Brown, an Agency medical consultant, determined that

Ms. Baxley could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, sit (with normal breaks) for about six hours in an eight-hour workday and had unlimited ability to push and/or pull. Dr. Brown noted that Ms. Baxley had certain postural limitations, meaning she could only "occasionally" climb, stoop or crouch. Dr. Brown found no manipulative, visual, communicative or environmental limitations, although he observed that she should avoid concentrated exposure to hazards. Dr. Brown recommended a "light" residual functional capacity "with occasional stooping and crouching due to multiple diskectomies and avoidance of concentrated exposures to heights and hazards and climbing due to history of seizure activities with loss of consciousness."

Dr. Robert Pyle, another Agency medical consultant, reached similar conclusions. Dr. Pyle concluded that Ms. Baxley could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, sit (with normal breaks) for about six hours in an eight-hour workday and had unlimited ability to push and/or pull. Dr. Pyle noted that Ms. Baxley could only "occasionally" climb, balance, stoop, kneel, crouch or crawl. Dr. Pyle found no manipulative, visual, communicative or environmental limitations.

With respect to Ms. Baxley's mental residual functional capacity, Dr. W. W. Albertson, an Agency medical consultant, concluded that Ms. Baxley suffered from depression and obsessive compulsive disorder, both of which he described as "improved," and that Ms. Baxley had only mild limitations on her activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence or pace. Dr. Albertson also observed that Ms. Baxley was

"capable of understanding and remembering simple instructions," "capable of maintaining the level of attention and concentration needed to perform" simple, routine, repetitive tasks, and "capable of interacting appropriately with coworkers," but would have "some difficulty adapting to routine change." Dr. Albertson opined that Ms. Baxley was capable of completing simple, routine, repetitive tasks in a low stress environment.

Dr. William Oliver Mann, another Agency medical consultant, reached similar conclusions. Dr. Mann concluded that Ms. Baxley suffered from depression and that she had only mild limitations on her activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence or pace. Dr. Mann also observed that Ms. Baxley was capable of understanding and remembering simple instructions," "able to sustain concentration for a two hour period of time," and "able to interact with others," but "would have some difficulty with adapting to routine changes." Taking all of the evidence into account, the ALJ concluded that Ms. Baxley retained the ability to perform "unskilled" to "semi-skilled" "light" or "sedentary" jobs which would not require frequent or repetitive bending, climbing, stooping or squatting. Based on all of the foregoing, the undersigned concludes that substantial evidence supports the ALJ's residual functional capacity determination.

Ms. Baxley does not appeal the ALJ's determination that there are a significant number of jobs in the national economy that an individual with her age, educational background, work experience and residual functional capacity could perform. Irrespective of Ms. Baxley's failure to raise the issue on appeal, the undersigned concludes that substantial evidence supports the ALJ's determination. The testifying vocational expert offered evidence of specific jobs that such an individual would be able to perform and the number of such jobs existing in North Carolina and in

the national economy. Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's determination that Ms. Baxley could perform work which exists in significant numbers in the national economy.

Because substantial evidence supports both the finding that Ms. Baxley has a residual functional capacity for "unskilled" to "semi-skilled" "light" or "sedentary" jobs which would not require frequent or repetitive bending, climbing, stooping or squatting, and that Ms. Baxley could perform work which exists in significant numbers in the national economy, Ms. Baxley is not disabled for Social Security purposes.

## V. ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**

1. The "Motion for Summary Judgment" (Document No. 10), filed February 17, 2005 by Ms. Baxley, is **DENIED**; the "Motion for Summary Judgment (Document No. 13), filed March 18, 2005 by the Commissioner, is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**Signed: September 26, 2005**

David C. Keesler
United States Magistrate Judge